1

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ROCHELLE MEZZANO, JAY V. SHORE,
individually, and as next friend for Rochelle
Mezzano,                                              Case No.  3:23-cv-00324-RJC-CSD

       Plaintiff,

  vs.

SECOND JUDICIAL DISTRICT COURT OF
THE STATE OF NEVADA, as a covered entity
under the Americans with Disabilities Act;
THE STATE OF NEVADA; BRIDGET E.
ROBB, individually, and in her professional
capacity as Judge; ALICIA LERUD,
individually, and as Trial Court Administrator
and Clerk for the Second Judicial District
Court of the State of Nevada; EMILY REED,
Individually, and as ADA Coordinator and
Assistant Court Administrator for the Second
Judicial District Court of the State of Nevada;
WILLIAM M. WRIGHT, JR. individually, and
as Assistant Court Administrator for the
Second Judicial District Court of the State of
Nevada,

       Defendants.                              /

ORDER GRANTING DISMISSAL

In filing this case, *pro se* plaintiffs Rochelle Mezzano and Jay Shore are seeking to improperly enjoin and otherwise thwart ongoing state court divorce proceedings.  Plaintiff Rochelle Mezzano's divorce proceedings have been pending in the Second Judicial District Court of Nevada for four years. On July 5, 2023, the day before her divorce trial was to proceed, Plaintiff Mezzano and non-attorney Plaintiff Jay Shore, as next friend of Rochelle Mezzano, filed this action against the presiding state court judge and court administration seeking federal intervention.  Plaintiffs seek declaratory and injunctive relief under Title II of the Americans with

Disabilities Act ("ADA") requesting that this Court remove the divorce case to federal court and enjoin Judge Robb from further acting or adjudicating the dispute.  Plaintiffs additionally request declaratory relief in the form of an instruction to the Defendants on how to act and behave in accordance with the ADA. Additionally, Plaintiffs seek the answers to at least thirty-six (36) separate questions about the ADA.

For the reasons given herein, the Court finds that Plaintiffs' Complaint is frivolous and brought in bad faith, and hereby grants dismissal of this action in its entirety. Further, pursuant Fed.R.Civ.P. 12(b)(1), this Court lacks jurisdiction over Plaintiffs' claims under the *Younger* and *Rooker-Feldman* abstention doctrines. Finally, pursuant to Fed.R.Civ.P. 12(b)(6), even under the most liberal pleadings standards, the Complaint fails to state a claim upon which relief can be granted against.  Accordingly, dismissal is appropriate.

I.       BACKGROUND

The following background facts are adopted from the Complaint:

This action arises out of an ongoing divorce case pending in the Second Judicial District Court of Nevada ("SJDC"). (ECF No. 1).  Plaintiff Rochelle Mezzano ("Mezzano") and her husband John Townley are parties to the divorce action that has been pending for nearly four years.  (*Id.* at 5 (citing *Townley v. Mezzano*, DV 19-01564 (Second Judicial District Court of Nevada))[1].

On or about January 11, 2023, acting on behalf of Mezzano, Plaintiff Jay Shore ("Shore") called Clerk of Court Alicia Lerud requesting the email or fax number for the ADA Coordinator.  (*Id.* at 6).  Ms. Lerud told him that he could send the request to her.  (*Id.*).

---

[1] The Court takes judicial notice of the state court proceedings in *Townley v. Mezzano*, DV 19-01564 because they are referenced throughout the Complaint and because they form the basis for this lawsuit. *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (the court "may take judicial notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." (internal quotations and citations omitted)).

On January 12, 2023, Shore sent a letter to Lerud and Judge Robb. (*Id.* at Ex. A). Within that letter, Shore explains that he is not an attorney but rather is acting as an ADA Advocate on behalf of Mezzano. (*Id.*). After disclaiming any legal acumen, Shore spends three pages of the letter criticizing Mezzano's counsel and criticizing Judge Robb's rulings in the divorce action. (*Id.* at Ex. A pp 3-5). In the letter, Shore claims that Mezzano is a qualified individual with a disability and requests the following accommodations:

- Ms. Mezzano needs the ability to attend any and all Court proceedings via Zoom or other video interface remotely from her home;
- The undersigned Advocate needs the ability to attend any and all Court proceedings via Zoom or other video interface remotely;
- Ms. Mezzano needs the ability to record any and all hearings, proceedings, calls, or other interactions with the Court, to mitigate communication disability;
- Ms. Mezzano needs the undersigned Advocate to assist (aid and encourage – 42 U.S.C. §12203(b)) her in the exercise and enjoyment of her rights under the ADA. This includes, without limitation, the ability to calm her, or help her refocus on the matters at hand; the ability to converse with her about what symptomatic presentations are arising, and how to mitigate these responses, commonly referred to as triggers; and the ability to ask the Court for a break to allow refocus or discussion of disability mitigation to allow Ms. Mezzano to maintain as high a level of executive function/cognitive presence as possible. The ADA Advocate also needs to be able to ask the Court on behalf of Ms. Mezzano, to give the static, complete, full, and permanent meaning to any words or terms that are unclear to Ms. Mezzano, or the Advocate;
- Ms. Mezzano needs to be able to ask the Court for, and receive from the Court, the static, complete, full and permanent meaning to any words or terms that are unclear to Ms. Mezzano;
- Ms. Mezzano needs the Court to use only plain English, and refrain from using legalese or terms that are unclear, without first providing a glossary of said terms that contain static, complete, full, and permanent meaning to any words or terms that are or may be unclear to Ms. Mezzano;
- Ms. Mezzano needs the Court to order that the opposing counsel or opposing party only use plain English, and refrain from using legalese or terms that are unclear to Ms. Mezzano, without first providing a glossary of said terms that contain static, complete, full, and permanent meaning to any words or terms that are or may be unclear to Ms. Mezzano;
- Ms. Mezzano demands that the Court refrain from unlawful acts of coercion, intimidation, threats, and interference, as per 42 U.S.C. §12203(b), in any act or deed of the Court. Shore also stated that Ms. Mezzano will, at all times henceforth, be exercising her rights under the ADA while Case No. DV19-01564 in the Family Division of the Second Judicial District Court of the State of Nevada

in and for the County of Washoe continues, or in any other Court proceeding or ancillary proceeding related to any Court matter;

- Ms. Mezzano needs the Court to allow extra time to process and complete tasks for the purpose of disability mitigation; and

- As a qualified individual who is authorized under 42 U.S.C. §12203(b) and 28 C.F.R. §35.134(b) to aid and encourage Ms. Mezzano in the exercise and enjoyment of her rights under the ADA, the undersigned Advocate will also need the reasonable modification of being allowed to record all interactions with the Court, including without limitation, hearings, proceedings, calls, or other communications or interactions for disability mitigation.

(*Id.* at 5-6).

On January 12, 2023, Lerud replied by email acknowledging she had received the letter and informing Shore that he had engaged in an improper ex parte communication to the court by also sending the letter to Judge Robb.

On January 13, 2023, former Assistant Clerk of Court William Wright emailed Shore and Mezzano stating that he would be the primary point of contact for Mezzano's ADA request and cautioned Shore about ex parte communications with Judge Robb.  (*Id.* at Ex. B). Wright also stated that if "[Shore] or Ms. Mezzano would like to make any official filings before the Court, that you should certainly feel free to make those filing[s]." (*Id.* at Ex. C).

On January 30, 2023, Wright emailed Shore and Mezzano stating that the requests could not be accommodated by Court Administration because they sought to alter the court proceedings, and therefore needed to be decided by Judge Robb. (*Id.* at 11). Wright further stated that: "[m]y understanding is that Ms. Mezzano is currently represented by counsel in this matter. The requests that you have made should be made by her counsel and filed with the Court to make appropriate rulings and determinations." (*Id.* at 11-12).

On March 13, 2023, a settlement conference was held in the divorce proceedings.  (Id. at 13-18). Judge Robb questioned Mezzano on why she did not file a Settlement Conference Statement. (*Id.*). Mezzano stated that she did not have ADA access to the court and wanted her ADA advocate to be present. (*Id.*). Judge Robb informed her that she needed to file a motion with

the Court and not send in ex parte requests, and that the settlement conference would proceed. (*Id.*).

On April 4, 2023, Judge Robb sent an email to Shore and Mezzano along with Court Administration that stated:

> "As I have said, multiple times, Ms. Mezzano needs to make a formal filing with the Court in order for me to take action.  The filing can be sealed, and subject to in camera review, but I cannot act in a substantive way without a formal request. Moreover, Ms. Mezzano requested, and I GRANTED her request to have her ADA advocate present with her in Court.  He was not present, despite her request, at the last hearing."

(*Id.* at Ex. E.).

On April 14, 2023, Judge Robb issued an Order Regarding Pre-Trial Procedure for the April 17, 2023 divorce trial which stated in relevant part that: "Ms. Mezzano may have a support person of her choosing present at trial as broadly contemplated by NRS 125.080." (Id. at 20-26 & Ex. F).

On April 17, 2023, Assistant Clerk of Court Emily Reed sent Shore an email which stated that: "Last week, Judge Robb approved your virtual appearance as Ms. Mezzano's advocate.  The trial is currently on hold and my understanding is that Ms. Mezzano has been trying to reach you.  I am reaching out to confirm your availability for this afternoon and Wednesday all day. Please let me know at your earliest convenience."  (*Id.* at Ex. G).

Later that day, Shore responded that: "[i]f any reasonable person reads [the trial procedure order] they would reasonably observe that there is no grant of right for me, as Ms. Mezzano's ADA advocate, to attend trial.  I am not under Nevada Revised Statute 125.080.  I am in capacity under 42 USC §12203(b) and 28 CFR §35.134(b).  Shore also complained that Judge Robb did not copy him on the order directly and he only saw it because Mezzano provided him a copy.  (*Id.*).  Because of Shore's failure to appear, the divorce trial was vacated and reset.

On April 28, 2023, Judge Robb issued a Notice of Ex Parte Hearing, which stated that: "An ex parte hearing regarding A.D.A. issues has been scheduled in this matter for May 4, 2023

at 4:00 p.m. This hearing will be recorded on the Courts' JAVS system, which will be the official record of the proceedings. No other recordings will be permitted." (*Id.* at Ex. I).

On May 4, 2023, neither Mezzano nor Shore attended the Ex Parte Hearing. (Id. at 27-28).

On June 28, 2023, Judge Robb issued an Order Regarding Trial which set the trial for July 6, 2023. (*Id.* at Ex. J). The Order states in relevant part:

o   The trial will be recorded by the Department 13 clerk on the Court's JAVS system, which will be the official record of the proceedings. No other informal recording, not recorded by appropriate court personnel will be permitted to avoid any potential of contradictory or competing transcripts of the hearing.
o   Defendant and her ADA Advocate, currently Mr. Jay V. Shore, may appear by Zoom with the Zoom login information provided to the Parties below. Ms. Mezzano is not required to bring Mr. Shore and may have another ADA Advocate of her choosing present during trial. Failure of an ADA Advocate to appear will NOT be good cause for this matter to be continued as this matter has been continued once based upon the ADA Advocate's refusal to be present.
o   The Zoom operation will include the closed captioning function. The Court has investigated the use of a certified court reporter to provide such closed captioning. Due to the necessity of the court reporter being in the same location as the party seeking to use closed captioning, this option is not available. The Court will not require a court reporter to provide services in a private residence, which does not provide the safety measures of a court or business setting.

*Id.* at pp. 28-30 & Ex. J.

On July 5, 2023, Mezzano filed a document entitled "Notice of Filing Federal Complaint and Notice of Removal to Federal Court" in her divorce proceeding." *See Townley v. Mezzano*, DV 19-01564.

## II.   PROCEDURAL HISTORY

On July 5, 2023, Mezzano and Shore filed the present lawsuit in the United States District Court for the District of Nevada asserting claims of discrimination and retaliation under Title II of the ADA and referencing substantive due process. (ECF No. 1).

On July 17, 2023, Defendants Second Judicial District Court of Nevada, Judge Robb, Emily Reed, Alicia Lerud, and William Wright Jr. filed a Motion to Dismiss. (ECF No. 12). Defendants argue that federal abstention is required under *Younger v. Harris* and the *Rooker-Feldman* doctrine,

that Plaintiffs claims are barred by judicial immunity, and that plaintiffs' allegations fail to state claims upon which relief can be granted.  (ECF No. 17).

On July 19, 2023, Defendants filed an Emergency Motion to Remand and/or Motion for Order to Show Cause on the Notice of Removal arguing that the notice of removal filed in the state court action has deprived the state court of jurisdiction and that no petition for removal complying with 28 U.S.C. § 1446 has ever been filed.  (ECF No. 17). Further, by filing the Notice of Removal in state court, Plaintiff has obtained injunctive relief by preventing Second Judicial District Court from proceeding with the divorce proceedings without meeting the requirements of FRCP 65.

On July 21, 2023, the Court issued a Minute Order denying the Emergency Motion (ECF No. 17) but based on the urgency of the underlying issues, it set oral argument on the Motion to Dismiss for July 26, 2023 at 10:00 am.  (ECF No. 19).  Additionally, Plaintiffs were given until 5:00 p.m. on July 25, 2023 to file a response to the Motion to Dismiss.  (*Id.*).

On July 24, 2023, John Townley filed a Motion to Intervene pursuant to FRCP 24 arguing that the failure to appropriately remove the case has stifled his rights and for the Court to issue an order remanding the matter to the state court. (ECF No. 21).

On July 24, 2023, Defendant State of Nevada filed a Joinder to Defendants' Motion to Dismiss. (ECF No. 24).

At 9:29 AM on July 26, 2023, Plaintiffs filed a Petition for Writ of Mandamus to the Ninth Circuit.  (ECF No. 26).

At 10:00 am, a hearing on the Motion to Dismiss was held.  Plaintiffs did not attend.  All Defendants attended and presented oral argument.

III.    LEGAL STANDARDS

A. 12(b)(1) Legal Standard

Rule 12(b)(1) allows defendants to seek dismissal of a claim or action for a lack of subject matter jurisdiction. Although the defendant is the moving party in a motion to dismiss brought under Rule 12(b)(1), the plaintiff is the party invoking the court's jurisdiction. As a result, the

1  plaintiff bears the burden of proving that the case is properly in federal court. *See McCauley v. Ford*

2  *Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001) (citing *McNutt v. General Motors Acceptance Corp.*, 298

3  U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). Plaintiff's burden is subject to a preponderance

4  of the evidence standard. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

5      Federal courts are courts of limited jurisdiction. *See Owen Equip. & Erection Co. v. Kroger*, 437

6  U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). A federal court is presumed to lack jurisdiction

7  in a particular case unless the contrary affirmatively appears. *See Stock West, Inc. v. Confederated*

8  *Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). "Because subject matter

9  jurisdiction goes to the power of the court to hear a case, it is a threshold issue and may be raised

10  at any time and by any party." *Mallard Auto. Grp., Ltd. v. United States*, 343 F. Supp. 2d 949, 952 (D.

11  Nev. 2004) (citing Fed. R. Civ. P. 12(b)(1)).

12      **B. 12(b)(6) Legal Standard**

13      A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief

14  can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and

15  plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2);

16  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). While Rule

17  8 does not require detailed factual allegations, it demands more than "labels and conclusions" or

18  a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129

19  S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). "Factual

20  allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct.

21  1955. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to

22  "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting

23  *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).

24      In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply

25  when considering motions to dismiss. First, a district court must accept as true all well-pleaded

26  factual allegations in the complaint; however, legal conclusions are not entitled to the

assumption of truth. *Id.* at 678, 129 S.Ct. 1937. Mere recitals of the elements of a cause of action,

supported only by conclusory statements, do not suffice. *Id.* at 678, 129 S.Ct. 1937. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679, 129 S.Ct. 1937. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678, 129 S.Ct. 1937. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679, 129 S.Ct. 1937 (alteration in original) (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *See* Twombly, 550 U.S. at 570, 127 S.Ct. 1955.

While a court generally cannot consider matters beyond the pleadings on a motion to dismiss, the court may consider documents "'properly submitted as part of the complaint'" and "may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001) (internal quotations omitted); *see also Mack v. South Bay Beer Distrib., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), abrogated on other grounds by *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991) ("[O]n a motion to dismiss a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment.").

## IV.   DISCUSSION

### A.  PLAINTIFFS' FILING OF THE PETITION FOR WRIT OF MANDAMUS DOES NOT DIVEST THIS COURT OF JURISDICTION

A few minutes before the hearing on the Motion to Dismiss, Plaintiffs filed a Petition for Writ of Mandamus with the United States Court of Appeals for the Ninth Circuit with the stated purpose "to divest the district court of jurisdiction in this proceeding..." (ECF No. 27).

"A district court does not lose jurisdiction over a case merely because a litigant files an interlocutory petition for an extraordinary writ." *Ellis v. U.S. Dist. Court for W. Dist. of Washington*

1  (*Tacoma*), 360 F.3d 1022, 1023 (9th Cir. 2004) citing *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1416 (5th

2  Cir. 1995). The Fifth Circuit in *Woodson*, stated in relevant part:

> the Federal Rules of Civil Procedure do not provide for an automatic stay of
> district court proceedings while a petition for writ of mandamus is pending. If
> the district court or the court of appeals finds it appropriate to stay
> proceedings while a petition for mandamus relief is pending, such a stay may
> be granted in the court's discretion. However, absent such a stay, the
> jurisdiction of the district court is not interrupted.

*Id.* at 1416.

Accordingly, this Court finds that no stay is appropriate in this case and will proceed to
the merits of Defendants' Motion to Dismiss.

### B.  MR. SHORE IS ENGAGING IN THE UNAUTHORIZED PRACTICE OF LAW

Plaintiff Jay Shore appearing pro se asserts that he is "acting in a capacity as aid and
encouragement and/or if necessary, under Rule 17(c)(2) as Next Friend of Plaintiff Mezzano."
Nothing in FRCP 17, nor the ADA allows for Mr. Shore, a non-attorney, to represent Ms.
Mezzano in any manner in this action. Shore's action is a transparent attempt to engage in the
unauthorized practice of law.

In order to establish next-friend standing, the putative next friend must show: (1) that
the petitioner is unable to litigate his own cause due to mental incapacity, lack of access to court,
or other similar disability; and (2) the next friend has some significant relationship with, and is
truly dedicated to the best interests of, the petitioner." *Naruto v. Slater*, 888 F.3d 418, 421 (9th Cir.
2018)(holding that PETA lacked "next friend" standing for a monkey).

The Complaint contains no facts that establish that Ms. Mezzano suffers from "mental
incapacity, lack of access to court, or other similar disability" that would not allow her to litigate
this case on her own behalf. Mezzano is litigating on her own behalf in her state court action
and while she has claimed that she suffers from Complex Post Trauma Stress Disorder in the
Complaint, this does not render her incompetent or mentally deficient to have a next friend

1    recognized under FRCP 17.  Moreover, there is no showing that Mr. Shore has a significant

2    relationship with or is dedicated to the best interest of Mezzano.

3    Importantly, individuals not licensed to practice law by the state may not use the next

4    friend device as an artifice for the unauthorized practice of law. *Weber v. Garza*, 570 F.2d 511, 514

5    (5th Cir. 1978). Courts have routinely adhered to the general rule prohibiting *pro se* plaintiffs from

6    pursuing claims on behalf of others in a representative capacity. *Simon v. Hartford Life, Inc.*, 546 F.3d

7    661, 664 (9th Cir. 2008).

8    The record shows that Shore has been engaging in the unauthorized practice of law by

9    representing Mezzano in both this Court and in the state divorce court.  Shore is not a licensed

10    attorney, but represents himself as a "certified ADA Advocate."  (ECF No 1 at Ex. 1).  However,

11    his actions go beyond the bounds of merely providing aid and encouragement in the exercise of

12    Mezzano's right under the ADA.  *See* 42 U.S.C. §12203(b).

13    By way of example, within his letter dated January 12, 2023 to Judge Robb and Alicia

14    Lerud, after disclaiming any legal acumen, Shore spends three pages of the letter criticizing

15    Mezzano's counsel and criticizing Judge Robb's rulings in the divorce action. ECF No. 1 at Ex. A

16    pp 3-5.  Shore is advocating on behalf of Mezzano by outlining Mezzano's legal positions

17    regarding the Supreme Court of Nevada's reversal order and by detailing criticisms that Mezzano

18    has regarding her beneficial interest in title to property.  Shore is advocating on behalf of a client

19    to the presiding judge on matters that are in dispute in the underlying divorce action.  This

20    constitutes the quintessential unauthorized practice of law.

21    Accordingly, Shore will be referred to the State Bar of Nevada for attempting to practice

22    illegally without a license.  In the underlying action, Shore has brought claims for retaliation

23    under Title II of the ADA.  To the extent that he has brought them on his own behalf, they will

24    be addressed below.

25    ### C.  YOUNGER ABSTENTION DOCTRINE BARS PLAINTIFFS' CLAIMS

26    The Supreme Court, in *Younger*, espoused a strong federal policy against federal court

interference with pending state judicial proceedings. *H.C. ex rel. Gordon v. Koppel*, 203 F.3d 610, 613

(9th Cir. 2000). "Absent extraordinary circumstances, Younger abstention is required if the state proceedings are (1) ongoing, (2) implicate important state interests, and (3) provide the plaintiff an adequate opportunity to litigate federal claims." *San Remo Hotel v. City & Cnty. of San Francisco*, 145 F.3d 1095, 1103 (9th Cir. 1998). State proceedings are ongoing until state-appellate review is completed, and the Ninth Circuit has recognized that "protecting the authority of the [state] judicial system" and the "field of domestic relations" are traditionally "vital" state interests and "area[s] of state concern." *Koppel*, 203 F.3d at 613.

In *Koppel*, plaintiffs sought to invoke the power of the federal courts to alter the course of pending state custody proceedings. 203 F.3d 610 (9th Cir. 2000). Similar to the present case, the plaintiffs sought an order requiring procedural due process to be observed in the future course of the litigation. *Id.* at 613. The Ninth Circuit rejected the request holding that:

> Important state interests also are implicated. "Family relations are a traditional area of state concern." *Moore v. Sims*, 442 U.S. 415, 435, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); *see also Morrow v. Winslow*, 94 F.3d 1386, 1397 (10th Cir.1996). In addition, a state has a vital interest in protecting "the authority of the judicial system, so that its orders and judgments are not rendered nugatory." *Juidice v. Vail*, 430 U.S. 327, 336 n. 12, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977). This is a particularly appropriate admonition in the field of domestic relations, over which federal courts have no general jurisdiction, *see Ankenbrandt v. Richards*, 504 U.S. 689, 697–701, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), and in which the state courts have a special expertise and experience. *See Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979).
>
> The plaintiffs have an adequate state forum in which to pursue their federal claims. In fact, they have already raised some of the same due process issues in the California appellate courts. Plaintiffs may appeal through those courts after final judgment.
>
> This is precisely the type of case suited to *Younger* abstention. *See Mann v. Conlin*, 22 F.3d 100, 106 (6th Cir.1994) (holding that *Younger* abstention was appropriate in § 1983 action alleging that a state court judge violated plaintiff's due process rights in custody battle). Plaintiffs desire wholesale federal intervention into an ongoing state domestic dispute. They seek vacation of existing interlocutory orders, and a federal injunction directing the future course of the state litigation. This is not the proper business of the federal judiciary.

*Id.*

1   Plaintiffs are seeking wholesale federal intervention into Mezzano's divorce trial, seek to

2   vacate Judge Robb's interlocutory pre-trial orders, and seek to have this Court direct the future

3   course of the state litigation. *See* ECF No. 1 at 38.  As the Ninth Circuit put it, this is "not the

4   proper business of the federal judiciary." *Koppel*, 203 F.3d at 613.  Plaintiffs can make their

5   constitutional and ADA arguments on appeal through the Nevada appellate courts after a final

6   judgment in the divorce matter.  Accordingly, *Younger* abstention is required in this case.[2]

7   ### D.  ROOKER-FELDMAN DOCTRINE BARS PLAINTIFFS' CLAIMS

8   The *Rooker-Feldman* doctrine arises from two Supreme Court decisions defining federal

9   district court jurisdiction and the relationship between federal district courts and state courts.

10   Federal district courts possess "strictly original" jurisdiction, and thus have no power to exercise

11   subject matter jurisdiction over a de facto appeal from a state court judgment. See *Rooker v. Fidelity*

12   *Trust Co.*, 263 U.S. 413, 414-17 (1923); *Dist. of Columbia Ct. of Appeals, et al. v. Feldman*, 460 U.S. 462,

13   482 (1983); *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004). Only the Supreme Court of

14   the United States has jurisdiction to review such judgments. *Feldman*, 460 U.S. at 482; *see also* 28

15   U.S.C. § 1257.

16   "To determine whether the *Rooker–Feldman* bar is applicable, a district court first must

17   determine whether the action contains a forbidden de facto appeal of a state court decision." *Bell*

18   *v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013). "A de facto appeal exists when 'a federal plaintiff

19   asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a

20   state court judgment based on that decision.'" *Id.* (quoting *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir.

21   2003)); *see also Cooper v. Ramos*, 704 F.3d 772, 777–78 (9th Cir. 2012) ("To determine whether an

22   action functions as a de facto appeal, we 'pay close attention to the *relief* sought by the federal-

---

24   [2] Generally, in a case for injunctive relief, if the *Younger* doctrine applies, the district court has no discretion; it must
25   dismiss. But in an action for damages, federal courts should be stay the case until the state proceedings are
    completed. *Gilbertson v. Albright*, 381 F.3d 965, 968 (9th Cir. 2004). Damages are not specifically plead in
    Plaintiffs' Complaint, but they are referenced.  Accordingly, this Court will address Defendants other arguments that
26   require dismissal of the action in its entirety.

court plaintiff.' " (quoting *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003) (emphasis in original)).

This lawsuit is a direct attempt by Plaintiffs to collaterally attack the orders issued by Judge Robb in the state court proceeding addressing Mezzano's request for accommodations under the ADA and the behavior of Mr. Shore as Ms. Mezzano's ADA advocate during the divorce court proceedings.

In the Complaint, Plaintiffs specifically challenge several Orders issued by Judge Robb. Plaintiffs assert that:

- Judge Robb's Order Regarding Pre-Trial Procedure dated April 14, 2023 was in violation of the ADA because it stated "Ms. Mezzano may have a support person of her choosing present at trial... rather than specifically inviting Mr. Shore by name to attend the proceedings as her ADA Advocate. (ECF No. 1 at pp. 20-26 & Ex. F).

- Judge Robb's Order regarding Ex Parte Hearing was in violation of the ADA because it omitted who was invited and stating that "[t]his hearing will be recorded on the Courts' JAVS system, which will be the official record of the proceedings.  No other recordings will be permitted." (*Id.* at pp. 27-28 & Ex. I).

- Judge Robb's Order Regarding Trial Procedure issued on June 28, 2023 was in violation of the ADA because it stated in relevant part that the:

  o trial will be recorded by the Department 13 clerk on the Court's JAVS system, which will be the official record of the proceedings.  No other informal recording, not recorded by appropriate court personnel will be permitted to avoid any potential of contradictory or competing transcripts of the hearing.

  o Failure of an ADA Advocate to appear will NOT be good cause for this matter to be continued as this matter has been continued once based upon the ADA Advocate's refusal to be present.

  o The Zoom operation will include the closed captioning function.  The Court has investigated the use of a certified court report to provide such closed captioning.

Due to the necessity of the court reporter being in the same location as the party seeking to use closed captioning, this option is not available. The Court will not require a court reporter to provide services in a private residence, which does not provide the safety measures of a court or business setting.

(*Id.* at pp. 28-30 & Ex. J).

The *Rooker-Feldman* doctrine prevents this Court from exercising subject matter jurisdiction over this action. Plaintiffs are attempting a de facto appeal of Judge Robb's Orders regarding reasonable accommodations. District courts throughout the Ninth Circuit have determined that the *Rooker-Feldman* doctrine bars similar de facto appeals of reasonable accommodation requests under the ADA. *See Farina v. Cnty. of Napa, California*, 2022 WL 1539518, at *2 (N.D. Cal. May 16, 2022)("This order need not entertain the merits of plaintiff's ADA claim to conclude that plaintiff raises a de facto appeal of a state-court order" and "*Rooker-Feldman* doctrine thwarts all claims); *Sidiakina v. Bertoli*, 2012 WL 12850130, at *3–4 (N.D. Cal. Sept. 7, 2012) (dismissing ADA claims against presiding judge based on Rooker-Feldman), *aff'd*, 612 Fed. Appx. 477 (9th Cir. 2015); *Bernstein v. United States Dept. of Hous. & Urb. Dev.*, 2021 WL 1530939, at *4 (N.D. Cal. Apr. 19, 2021) (dismissing ADA reasonable accommodation claims against Alameda County Superior Court and presiding judges based on *Rooker-Feldman* and judicial immunity); *McDaniels v. Dingledy*, 2021 WL 5564727, at *5 (W.D. Wash. Nov. 29, 2021) ("Plaintiff's ADA accommodation claims are barred by *Rooker–Feldman* because they challenge state court decisions denying his requests for reasonable accommodations under Title II of the ADA.").

In *Langworthy v. Whatcom Cty. Superior Ct.*, the district court held:

The *Rooker–Feldman* doctrine bars litigants from bringing claims against state courts based on denials of reasonable accommodations when the denial—in other words, the injury—is effected through a court order. *See Sykes*, 837 F.3d at 743 (dismissing an ADA claim based on a state judge's order banning plaintiff's service dog from the courtroom because the source of plaintiff's alleged injury was the state court judgment); *Sidiakina v. Bertoli*, 2012 WL 12850130, slip op. at 4 (N.D. Cal. Sept. 7, 2012), *aff'd*, 612 F. App'x 477 (9th Cir. 2015) (dismissing an ADA claim based on a state judge's denial of plaintiff's requests for reasonable accommodations, including appointed counsel,

-15-

disqualification of the assigned judge, and a change of venue); *Iceberg v. King Cnty. Super. Ct.*, 2021 WL 391615, slip op. at 4 (W.D. Wash. Feb. 4, 2021) (dismissing an ADA claim based on a state judge's denial of plaintiff's request for the appointment of counsel as an accommodation under GR 33); *Winchester v. Yakima Cnty. Super. Ct.*, 2011 WL 133017, slip op. at 1 (E.D. Wash. Jan. 14, 2011) (same)....

2021 WL 1788391, at \*3 (W.D. Wash. May 5, 2021).

Plaintiffs' claims are barred by *Rooker-Feldman* because they are seeking a de facto appeal of Judge Robb's orders on their reasonable accommodation requests under the ADA. Accordingly, this Court lacks subject matter jurisdiction over this action pursuant to FRCP 12(b)(1) under the Rooker-Feldman doctrine.

### E. PLAINTIFFS' CLAIMS AGAINST JUDGE ROBB ARE BARRED BY JUDICIAL IMMUNITY

Judicial officers are entitled to absolute immunity from civil liability for acts committed within their judicial jurisdiction. *Pierson v. Ray*, 386 U.S. 547, 554 (1947). This immunity applies to civil actions for damages as well as declaratory or equitable relief. *Mullis v. Bankr. Ct. for the Dist. of Nev.*, 828 F.2d 1385, 1394 (9th Cir. 1987), *cert. denied*, 486 U.S. 1040 (1988). Although it covers only those acts that are judicial in nature, a judicial officer will not be deprived of immunity because the action she took was in error, was done maliciously, or was in excess of her authority; rather she will be subject to liability only when she acts in the clear absence of all jurisdiction. *See O'Neil v. City of Lake Oswego*, 642 F.2d 367, 369 (9th Cir. 1981) (citing *Stump v. Sparkman*, 435 U.S. 349, 360–61 (1978)).

It is well-settled that judicial immunity applies to actions brought under the ADA. *See Lund v. Cowan*, 5 F.4th 964, 970 (9th Cir. 2021)(applying judicial immunity in action alleging superior court judge's in-court comments violated Title II of the ADA); *Duvall*, 260 F.3d at 1133 (finding ADA claim based on judge's failure to accommodate hearing impairment during state court proceedings barred by judicial immunity); *Updike v. City of Gresham*, 62 F. Supp. 3d 1205, 1212-13 (D. Or. 2014) (applying judicial immunity to ADA claim arising from judge's failure to provide ASL interpreter); *see also Phiffer v. Oregon*, 586 Fed. Appx. 425, 425 (9th Cir. 2014) (affirming

1   dismissal of ADA claim concerning scheduling of hearing based on judicial immunity); *Fuery v.*

2   *Cherry*, 2018 WL 3993303, at *2 (E.D. Cal. Aug. 21, 2018) (extending judicial immunity to action

3   alleging state court judges violated ADA during adjudication of criminal cases). It is also well-

4   established that judicial immunity extends to substantive due process claims. *Pierson*, 386 U.S. at

5   554; *see also Stump*, 435 U.S. at 355-56; *Ashelman*, 793 F.2d at 1075.

6         Judicial immunity is only overcome if the actions were "nonjudicial actions, i.e., actions

7   not taken in the judge's judicial capacity" or were "actions, though judicial in nature, taken in the

8   complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12. Regarding the former, "[a]n act is

9   considered 'judicial' when it is a function normally performed by a judge and the parties dealt

10  with the judge in his judicial capacity." *Sidiakina*, 2012 WL 12850130, at *4 (citing *Stump*, 435 U.S.

11  at 362). "To determine if an individual acted in an official judicial capacity, a court must analyze

12  whether: "(1) the precise act is a normal judicial function; (2) the events occurred in the judge's

13  chambers; (3) the controversy centered around a case then pending before the judge; and (4) the

14  events at issue arose directly and immediately out of a confrontation with the judge in his or her

15  official capacity." *Ibid.* (quoting *Stump*, 435 U.S. at 362). "These factors are to be construed

16  generously in favor of the judge and in light of the policies underlying judicial immunity."

17  *Ashelman*, 793 F.2d at 1076.

18        Here, the claims against Judge Robb arises out her multiple rulings addressing Plaintiff

19  Mezzano's disability accommodation requests and actions taken while on the bench or in

20  chambers. *See* ECF No. 1 at ECF No. 1 at pp. 20-28 & Ex. F, I, & J.

21        A ruling rendered by a judge presiding over a case, as well as "exercising control over the

22  courtroom while court is in session[,]" are both normal judicial functions. *Duvall*, 260 F.3d at 1133;

23  *see also Bernstein*, 2021 WL 1530939 at *5 (holding that judges' denial of disability accommodations

24  requests, including requests for live hearings (instead of telephonic hearings), continuances,

25  appointment of counsel, morning hearings only, additional time for oral argument, and

26  extensions of time for responses to multiple motions and discovery requests so as to spread out

    their due dates, were normal judicial functions).

Judge Robb's actions occurred in her chambers or courtroom, and they centered around an action pending before her, i.e., the divorce action, and they arose directly and immediately out of Plaintiffs Mezzano and Shore's interactions with Judge Robb in her official capacity. *See Sidiakina*, 2012 WL 12850130, at *4 (rejecting argument that judge's decisions to deny motions was administrative).

Accordingly, Plaintiffs' claims against Judge Robb are dismissed with prejudice based on judicial immunity.

### F. PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AGAINST DEFENDANTS

Plaintiffs' claims against Defendants Lerud, Reed, and Wright in their individual capacities are dismissed with prejudice. Title II of the ADA does not provide for individual capacity suits against state officials. *See Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002); *Stewart v. Unknown Parties*, 483 F. App'x 374, 374 (9th Cir. 2012) (citing *Lovell v. Chander*, 303 F.3d 1039, 1052 (9th Cir. 2002)); *Newsome v. Ariz. Dep't of Corr.*, 2015 WL 437537, at *5 (D. Ariz. Feb. 3, 2015) (collecting courts of appeals cases finding no individual liability under Title II of the ADA); *see also Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (Title II of the ADA does not provide for individual capacity suits against state officials.).

To the extent Plaintiffs are attempting to bring individual capacity ADA claims under § 1983, they also fail to state a claim. *Vinson*, 288 F.3d at 1156 ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA....")).

Accordingly, Plaintiffs' individual capacity claims against Defendants Lerud, Wright, and Reed should be dismissed with prejudice pursuant to FRCP 12(b)(6).

### G. PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AGAINST THE SJDC AND DEFENDANTS WRIGHT, LERUD, OR REED IN THEIR OFFICIAL CAPACITIES.

The naming of Defendant Lerud, Reed, and Wright in their official capacities is redundant. Defendant Alicia Lerud serves as the Court Administrator & Clerk of Court for the

-18-

1   SJDC. (ECF No. 1 at 4). Defendant Emily Reed is the Assistant Court Administrator. (*Id.*).

2   Defendant William Wright is the former Assistant Court Administrator. (Id*.*)

3          A suit against a state official in his or her official capacity is not a suit against the official

4   but rather is a suit against the official's office. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)

5   (citations omitted); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Aguon v. Commw. Ports Auth.*, 316

6   F.3d 899, 901 (9th Cir. 2003); *see also Cortez v. Cnty. of Los Angeles*, 294 F.3d 1186, 1189-90 (9th Cir.

7   2002).  Because the SJDC is already named as Defendant in this action, the inclusion of Lerud,

8   Reed, and Wright is "redundant and warrant dismissal under Rule 12(b)(6)." *Underwood, et al., v.*

9   *Oriol, et al.*, 2023 WL 4489632, at *4 (D. Nev. 2023).  Accordingly, Plaintiffs claims against

10  Defendants Wright, Lerud, and Reed in their official capacities are dismissed with prejudice.

11         The only factual allegations in the Complaint to support the claims for a violation of Title

12  II of the ADA outside of those challenging Judge Robb's orders and court proceedings are that: (1)

13  Defendant Lerud discriminated against Mezzano and retaliated against Shore because the court

14  did not have a "designated responsible employee" under the ADA, ECF No. 1 at pp. 6-8; (2)

15  Defendant Wright discriminated against Mezzano and retaliated against Shore under the ADA

16  because he told Plaintiffs that their requests could not be accommodated by court administration

17  because they altered the divorce proceedings and needed to be brought before the judge, *Id.* at pp.

18  10-13; and (3) Defendant Reed violated the ADA because she is works for the court, ECF No. 1 at

19  pp. 11, 19, 20, 24, 25.[3]

20         To establish a prima facie case for discrimination under Title II, Mezzano must show that

21  (1) she was a qualified individual with a disability; (2) she was excluded from participation in or

22  otherwise discriminated against with regard to a public entity's services, programs, or activities,

23  and (3) such exclusion or discrimination was by reason of her disability. *Lovell v. Chandler*, 303

---

[3] Because there are absolutely no allegations in the Complaint that support a claim for discrimination or retaliation against Defendant Reed, those claims are dismissed.

F.3d 1039, 1052 (9th Cir. 2002) (citing *Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997)).

To establish a prima facie case for retaliation under Title II of the ADA, a plaintiff must show "(a) that he or she was engaged in protected activity, (b) that he or she suffered an adverse action, and (c) that there was a causal link between the two." *See T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 472 (9th Cir. 2015)(adopting Title VII's burden-shifting framework to Title II claims under the ADA and Nassar's "but for" causation test); *Emeldi v. Univ. of Ore.*, 673 F.3d 1218, 1223 (9th Cir. 2012).

Mezzano fails to state a claim for discrimination under the ADA based on the actions of Lerud. Plaintiffs assert that the SJDC discriminated against Mezzano by failing to identify a "designated responsible employee" pursuant to 28 C.F.R. §35.107(a). However, Plaintiffs completely fail to allege how this failure caused them to be "excluded from participation in or otherwise discriminated against" in the services of the SJDC. Based on the allegations in the Complaint, Plaintiffs were able to send a request for accommodations to Ms. Lerud on January 12, 2023. (ECF No. 1 at p. 18). Additionally, under the third prong of the test, there is no allegation that the SJDC's failure to have a designated responsible employee occurred because Plaintiff Mezzano had a disability. The Sixth Circuit has held, a plaintiff "cannot bring a claim under Title II of the ADA simply because the Juvenile Court lacked a designated coordinator or a grievance procedure." *Bowie v. Hamilton Cnty. Juvenile Court*, 2021 WL 1567983, at *2 (6th Cir. Jan. 20, 2021), *cert. denied*, 141 S. Ct. 2831 (2021), *reh'g denied*, 142 S. Ct. 926 (2021) citing *Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008); *Dillery v. City of Sandusky*, 398 F.3d 562, 568 (6th Cir. 2005). Additionally, as alleged in the Complaint, injunctive relief is unavailable because Defendant Reed has been named as the designated responsible employee. (ECF No. 1 at 62). Accordingly, these allegations of discrimination by Mezzano under the ADA fail to state a claim upon which relief can be granted.

Shore fails to state a claim for retaliation based on the actions of Lerud. There is no allegation that he suffered an adverse action based on the failure to have a "designated responsible

employee." An adverse action is adverse treatment that is reasonably likely to deter an individual from engaging in a protected activity. Mere inconvenience does not rise to the level of an adverse action. Moreover, there is no allegation that the but for cause of the SJDC's failure to have a designated responsible employee was because Shore was engaged in a protected activity.

Both Mezzano and Shore fail to state a claim based on the actions of Defendant Wright. Plaintiffs also assert that the SJDC discriminated against Mezzano because Defendant Wright told Plaintiffs that their requests could not be accommodated by court administration because they altered the divorce proceedings and needed to be brought before the judge. As alleged in the Complaint, on January 12, 2023, Plaintiff Shore sent a letter to Judge Robb and Alicia Lerud requesting the following accommodations:

- Ms. Mezzano needs the ability to attend any and all Court proceedings via Zoom or other video interface remotely from her home; and
- The undersigned Advocate needs the ability to attend any and all Court proceedings via Zoom or other video interface remotely; and
- Ms. Mezzano needs the ability to record any and all hearings, proceedings, calls, or other interactions with the Court, to mitigate communication disability; and
- Ms. Mezzano needs the undersigned to assist (aid and encourage – 42 U.S.C. §12203(b) her in the exercise and enjoyment of her rights under the ADA. This includes, without limitation, the ability to calm her, or help her refocus on the matters at hand, the ability to converse with her about what symptomatic presentations are arising, and how to mitigate these responses, commonly referred to as triggers, and the ability to ask the Court for a break to allow refocus or discussion of disability mitigation to allow Ms. Mezzano to maintain as high a level of executive function/cognitive presence as possible. The ADA Advocate also needs to be able to ask the Court on behalf of Ms. Mezzano, to give the static, complete, full, and permanent meaning to any words or terms that are unclear to Ms. Mezzano, or the Advocate; and
- Ms. Mezzano needs to be able to ask the Court for, and receive from the Court, the static, complete, full and permanent meaning to any words or terms that are unclear to Ms. Mezzano: and
- Ms. Mezzano needs the Court to use only plain English, and refrain from using legalese or terms that are unclear, without first providing a glossary of said terms that contain static, complete, full, and permanent meaning to any words or terms that are or may be unclear to Ms. Mezzano; and
- Ms. Mezzano needs the Court to order that the opposing counsel or opposing party only plain English, and refrain from using legalese or terms that are unclear to Ms. Mezzano, without first providing a glossary of said terms that contain static, complete, full, and permanent meaning to any words or terms that are or may be unclear to Ms. Mezzano; and

- Ms. Mezzano demands that the Court refrain from the unlawful acts of coercion, intimidation, threats, and interference, as per 42 U.S.C. §12203(b), in any act or deed of the Court.  Ms. Mezzano will, at all times henceforth, be exercising her rights under the ADA while Case No DV19-01564 in the Family Division of the Second Judicial District Court of the State of Nevada in and for the County of Washoe continues, or in any other Court proceeding or ancillary proceeding related with any Court matter; and
- Ms. Mezzano needs the Court to allow extra time to process and complete tasks for the purpose of disability mitigation; and
- As a qualified individual who is authorized under 42 U.S.C. §12203(b) and 28 C.F.R. §35.134(b) to aid and encourage Ms. Mezzano in the exercise and enjoyment of her rights under the ADA, the undersigned will also need the reasonable modification of being allowed to record and all interactions with the Court, including without limitations hearings, proceedings, calls, or other communications or interactions for disability mitigation.

(ECF No. 1 at pp. 8-20). On January 12, 2023, Defendant Lerud acknowledge receipt via email and stated that including Judge Robb was an ex parte communication.  (*Id.* at 20).  On January 13, 2023, William Wright responded to Shore and said that he was the primary point of contact for the accommodation requests and that communication be made to the court's administration team and "not include a judicial officer on the email." (*Id.* at 47). The Complaint avers that, on January 30, 2023, Wright responded that "[y]our requests cannot be accommodated by Court Administration. Since they request to alter court proceedings, they need to be brought before the Court for this specific case. My understanding is that Ms. Mezzano is currently represented by counsel in this matter. The requests that you made should be made by her counsel and filed with the Court to make any appropriate rulings."  (*Id.* at pp. 27-28.)

Plaintiffs assert that Wright's statements discriminated against Mezzano under the ADA because there is no provision in the ADA that requires court filings to seek accommodations. ECF No. 1 at 12.  This allegation is meritless.

In *Tennessee v. Lane*, 541 U.S. 509 (2004), the U.S. Supreme Court held that Title II of the ADA "required the States to take reasonable measures to remove architectural and other barriers to accessibility" to state courthouses." The Court explained that the ADA "does not require States to employ any and all means to make judicial services accessible to persons with

disabilities." *Id.* at 531-32. Rather, the ADA "requires only 'reasonable modifications' that would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for the service." *Id.* at 532. Mezzano's requests were not about physical barriers to the courthouse as presented in *Lane*. Rather, they sought modification of how her divorce proceeding was to be conducted. Based on Mezzano's specific requests, SJDC could not grant the requested modifications, only Judge Robb could.

Mezzano was requesting that Mr. Shore, as an ADA Advocate, be allowed to appear in her divorce proceedings. The divorce proceeding *Townley v. Mezzano*, DV 19-01564 was ordered sealed on October 7, 2019. Pursuant to NRS 125.080(b), all persons must be excluded from the proceedings unless delineated in the statute or allowed by the judge. Nevada law does not contemplate an ADA support person to attend the hearings; however, it does vest the presiding judge with discretion "upon oral or written motion of either party" to set a hearing to determine whether to exclude a certain individual. Thus, contrary to Plaintiffs' assertion, only Judge Robb had the power to allow Mr. Shore to attend the proceedings in the divorce action.

Similarly, Mezzano's request that she and Mr. Shore be allowed to appear remotely at all hearings could only be addressed by the presiding judge. *Hiramanek v. Clark*, 2016 WL 687974, at *8 (N.D. Cal. Feb. 19, 2016)(no ADA violation based upon a blanket request for telephonic appearances at "all pending and future court hearings," without regard to the purpose of each hearing because it would impermissibly require the court to abandon the discretion necessary to control proceedings."). It is well recognized that in general, courts have broad discretion to determine whether to order litigants to appear in person. *See, e.g., Estrada v. Speno & Cohen*, 244 F.3d 1050, 1052 (9th Cir. 2001) (finding no abuse of discretion in district court's decision to grant default judgment for repeated failure to comply with court orders, including order to appear in person); *Bartholomew v. Burger King Corp.*, No. CIV. 11-00613 JMS, 2014 WL 7419854, at *1 (D. Haw. Dec. 30, 2014) (affirming magistrate judge's order granting sanctions for failure to personally appear at settlement conference); *Winters v. Jordan*, No. 2:09-CV-0522-JAM-KJN, 2013 WL 5780819, at *8 (E.D. Cal. Oct. 25, 2013) (noting that "the mere fact that plaintiffs are proceeding

in forma pauperis does not entitle them to make telephonic appearances" and recommending dismissal for repeated failure to comply with court orders). Thus, the SJDC administrators could not grant Mezzano's request, only the presiding judge could.

Mezzano's request to record all hearings could only be addressed by Judge Robb. Nevada courts prohibit electronic devices being used for audio recording of a courtroom proceeding without the filing of a written request with the judge. *See* Nev. Sup. Ct. R. 246 ("Electronic devices may not be used for photography, or audio or video recording for broadcast or transmission, however, unless permission is obtained pursuant to Rule 230). Thus, Nevada law empowers only the presiding judge to grant the relief that Mezzano was seeking.

Finally, Mezzano's rather bizarre request that the presiding judge and opposing counsel refrain from "legalese" and speak "plain English" to accommodate her disability bear directly on how the divorce proceedings were being conducted. Only Judge Robb had the discretion to address this accommodation.

Requiring Ms. Mezzano to file a motion requesting relief in her divorce proceeding is not discrimination nor retaliation under the ADA. *See Bedford v. Michigan*, 722 Fed. Appx. 515, 520 (6th Cir. 2018). In *Bedford*, the Sixth Circuit addressed a remarkably similar case to the present. 722 Fed. Appx. 515 (6th Cir. 2018). Therein, the pro se plaintiff in a domestic relations litigation in family court submitted numerous requests for ADA accommodations based on having purported litigation stress syndrome. The state court denied her request to record proceedings because all court proceedings are recorded, and transcripts are available. *Id. at* 517. The state court denied her request for representation by a "disability advocate" because the advocate was not a lawyer. *Id.* In affirming the dismissal of the complaint, the Sixth Circuit held:

> The Americans with Disabilities Act does not require that a state court in a family-court proceeding approve an accommodation that allows a party to present her case through a nonlawyer "disability advocate" in violation of state law when the party did not file a motion as directed. Plaintiff has the same right as all litigants to be assisted in court proceedings by a lawyer or to speak on her own behalf, with or without the assistance of a lawyer. Imposing a federal duty to allow a litigant to act through a "disability advocate" without complying with the state court's requirement to file a

written motion on the issue would "fundamentally alter the services" provided by the court in violation of *Lane* and is not a reasonable modification.

*Id. at* 520.  Likewise, in the present case, it is not a violation of the ADA to require the filing of a motion requesting ADA accommodation with the presiding judge that will alter the proceedings.

Accordingly, Plaintiffs assertions of claims against the SJDC based on Mr. Wright's actions fail to state a claim upon which relief can be granted.

There are no factual allegations to support any claim against the SJDC based on Defendant Reed's actions. The allegations against Defendant Reed are nothing more than she "intermittently entered the picture of ADA compliance," she was included on an email from Judge Robb, she was subsequently appointed as ADA coordinator, and sent an email to Plaintiffs conveying Judge Robb's invitation to Mr. Shore to attend a hearing. *See* ECF No. 1 at p. 11, 19, 20, 24, 25. Even under the most liberal pleading standards, these allegations are insufficient to state a claim upon which relief can be granted.

The State of Nevada is named as a defendant in this action; however, there are no factual allegations contained in the Complaint to support a claim for relief and therefore the dismissal is appropriate under FRCP 12(b)(6).

Accordingly, Plaintiffs have failed to state a claim upon which relief can be granted for discrimination and retaliation under the ADA and substantive due process against the SJDC and the court administrators.  Accordingly, Plaintiffs' claims are dismissed with prejudice.

## H.  THE MOTION TO INTERVENE IS DENIED AS MOOT

John Townley has filed a motion to intervene in this action.  (ECF No. 21). As a party to the underlying state divorce proceedings, he sought to intervention

Mezzano has not appropriately removed the action from state court pursuant to 28 U.S.C. §1446.  Rather, she has filed the present action against the state court, the presiding judge, and the court administrators.  Removal is accomplished by the filing of a verified petition fulfilling the requirements of 28 U.S.C. § 1446.  It is a statutory procedure that provides for removal by a

1   defendant of an appropriate action from state to federal court and must be completed within 30-

2   days of service of the Complaint. 28 U.S.C. § 1446(b).

3        Mezzano has not removed the action under 28 U.S.C. § 1446 and could not.  Any attempt

4   at removal would be untimely because the underlying action has been ongoing for over four years

5   and would be barred by the domestic relations exemption.  *See Ankenbrandt v. Richard*, 504 U.S.

6   689, 703 (1992).

7        Based on this Court's dismissal of the Complaint in its entirety, the Motion to Intervene

8   is denied as moot.

9   CONCLUSION

10        Accordingly, Plaintiffs' Complaint is dismissed with prejudice pursuant to Fed.R.Civ.P.

11   12(b)(1), based on *Younger* abstention and/or *Rooker-Feldman* abstention doctrines and pursuant

12   to Fed.R.Civ.P. 12(b)(6), based on judicial immunity and failure to state a claim against

13   Defendants.  Based on the dismissal of this action and Plaintiffs' failure to appropriately remove

14   the action pursuant to 28 U.S.C. § 1446, the Motion to Intervene (ECF No. 21) is denied as moot.

15        IT IS SO ORDERED.

16        DATED this 31st day of July 2023.

19   _____

20   ROBERT C. JONES
    UNITED STATES DISTRICT JUDGE