# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

ROCHELLE MEZZANO, JAY V. SHORE, individually, and as next friend for Rochelle Mezzano,

    Plaintiffs,

vs.

SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, as a covered entity under the Americans with Disabilities Act, et al.,

    Defendants.

Case No. 3:23-cv-00324-RCJ-CSD

**ORDER**

    This is a divorce case that has gone off the rails. In September 2019, non-party John Townley filed for divorce from his wife, Plaintiff Rochelle Mezzano. (Dkt. 35 at 2). Four years later, Plaintiffs Mezzano and Jay V. Shore filed this lawsuit pro se[1] alleging that "the 2nd District and all other Defendants are knowingly and willfully outside the scope of the ADA [Americans

---

[1] "Courts in this circuit have an obligation to give a liberal construction to the filings of pro se litigants," which relieves pro se litigants "from the strict application of procedural rules and demands that courts not hold missing or inaccurate legal terminology or muddled draftsmanship against them." *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013). Even so, "pro se litigants must comply with the Federal Rules of Civil Procedure." *Bailey v. Suey*, 2014 WL 5342573, at *1 (D. Nev. Oct. 20, 2014), *aff'd*, 669 F. App'x 472 (9th Cir. 2016).

With Disabilities Act], and blatantly denying equal access on the basis of disability[.]" (Dkt. 1 at 30). The Court dismissed the case with prejudice on July 31, 2023, finding it to be "frivolous and brought in bad faith[.]" (Dkt. 33 at 2).

Now, pending before the Court, are Defendants' Motion for Attorney's Fees and Costs, (Dkt. 34), and Motion for Sanctions, (Dkt. 35).[2] For the following reasons, the Court grants the motions.

I.   **Factual Background**

This action arises out of an ongoing divorce case pending in the Second Judicial District Court of Nevada ("SJDC"). (Dkt. 1). Mezzano and her husband John Townley are parties to the divorce action that has been pending for over four years. (*Id.* at 5) (citing *Townley v. Mezzano*, DV 19-01564 (Second Judicial District Court of Nevada).[3] On or about January 11, 2023, acting on behalf of Mezzano, Shore called Clerk of Court Alicia Lerud requesting the email or fax number for the ADA Coordinator. (*Id.* at 6).

On January 12, 2023, Shore sent a letter to Lerud and Judge Robb. (*Id.* at Ex. A). Within that letter, Shore explained that he is not an attorney but rather is acting as an ADA Advocate on behalf of Mezzano. (*Id.*). After disclaiming any legal acumen, Shore spent three pages of the

---

[2]   Plaintiffs have not filed a response in opposition to either motion. Under this Court's Local Rules, failure to file a response in opposition constitutes consent to the granting of the motion, except in the case of certain motions including motions for attorney's fees. LR 7-2(d).

[3]   The Court takes judicial notice of the state court proceedings in *Townley v. Mezzano*, DV 19-01564 because they are referenced throughout the Complaint and because they form the basis for this lawsuit. *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (the court "may take judicial notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." (internal quotations and citations omitted)).

letter criticizing Mezzano's counsel and criticizing Judge Robb's rulings in the divorce action. (*Id.* at Ex. A pp 3-5). In the letter, Shore claimed that Mezzano is a qualified individual with a disability and requested a number of accommodations. (*See Id.* at 5–6).

On January 12, 2023, Lerud replied by email acknowledging she had received the letter and informing Shore that he had engaged in an improper ex parte communication to the court by also sending the letter to Judge Robb. On January 13, 2023, former Assistant Clerk of Court William Wright emailed Shore and Mezzano stating that he would be the primary point of contact for Mezzano's ADA request and cautioned Shore about ex parte communications with Judge Robb. (*Id.* at Ex. B). Wright also stated that if "[Shore] or Ms. Mezzano would like to make any official filings before the Court, that you should certainly feel free to make those filing[s]." (*Id.* at Ex. C).

On January 30, 2023, Wright emailed Shore and Mezzano stating that the requests could not be accommodated by Court Administration because they sought to alter the court proceedings, and therefore needed to be decided by Judge Robb. (*Id.* at 11). Wright further stated that: "[m]y understanding is that Ms. Mezzano is currently represented by counsel in this matter. The requests that you have made should be made by her counsel and filed with the Court to make appropriate rulings and determinations." (*Id.* at 11–12).

On March 13, 2023, a settlement conference was held in the divorce proceedings. (*Id.* at 13-18). Judge Robb questioned Mezzano on why she did not file a Settlement Conference Statement. (*Id.*). Mezzano stated that she did not have ADA access to the court and wanted her ADA advocate to be present. (*Id.*). Judge Robb informed her that she needed to file a motion with the Court and not send in ex parte requests, and that the settlement conference would proceed.

(*Id.*). On April 4, 2023, Judge Robb sent an email to Shore and Mezzano along with Court Administration that stated:

> "As I have said, multiple times, Ms. Mezzano needs to make a formal filing with the Court in order for me to take action.  The filing can be sealed, and subject to in camera review, but I cannot act in a substantive way without a formal request.  Moreover, Ms. Mezzano requested, and I GRANTED her request to have her ADA advocate present with her in Court.  He was not present, despite her request, at the last hearing."

(*Id.* at Ex. E.).

On April 14, 2023, Judge Robb issued an Order Regarding Pre-Trial Procedure for the April 17, 2023 divorce trial which stated in relevant part that: "Ms. Mezzano may have a support person of her choosing present at trial as broadly contemplated by NRS 125.080." (*Id.* at 20–26 & Ex. F).  On April 17, 2023, Assistant Clerk of Court Emily Reed sent Shore an email which stated that: "Last week, Judge Robb approved your virtual appearance as Ms. Mezzano's advocate.  The trial is currently on hold and my understanding is that Ms. Mezzano has been trying to reach you.  I am reaching out to confirm your availability for this afternoon and Wednesday all day.  Please let me know at your earliest convenience."  (*Id.* at Ex. G).

Later that day, Shore responded that: "[i]f any reasonable person reads [the trial procedure order] they would reasonably observe that there is no grant of right for me, as Ms. Mezzano's ADA advocate, to attend trial. I am not under Nevada Revised Statute 125.080.  I am in capacity under 42 USC §12203(b) and 28 CFR §35.134(b).  Shore also complained that Judge Robb did not copy him on the order directly and he only saw it because Mezzano provided him a copy." (*Id.*).  Because of Shore's failure to appear, the divorce trial was vacated and reset.

On April 28, 2023, Judge Robb issued a Notice of Ex Parte Hearing, which stated that: "An ex parte hearing regarding A.D.A. issues has been scheduled in this matter for May 4, 2023 at 4:00

p.m. This hearing will be recorded on the Courts' JAVS system, which will be the official record of the proceedings. No other recordings will be permitted." (*Id.* at Ex. I). Neither Mezzano nor Shore attended the Ex Parte Hearing. (*Id.* at 27–28). On June 28, 2023, Judge Robb issued an Order Regarding Trial which set the trial for July 6, 2023. (*Id.* at Ex. J). On the eve of trial, July 5, 2023, Mezzano filed a complaint in this Court, (*id.*), as well as a document in state court entitled "Notice of Filing Federal Complaint and Notice of Removal to Federal Court" in her divorce proceeding. *See Townley v. Mezzano*, DV 19-01564. In August 2023, the Court dismissed Mezzano's complaint with prejudice "pursuant to Fed. R. Civ. P. 12(b)(1), based on *Younger* abstention and/or *Rooker-Feldman* abstention doctrines and pursuant to Fed. R. Civ. P. 12(b)(6), based on judicial immunity and failure to state a claim against Defendants." (Dkt. 33 at 26).

## II.     Legal Standard

Rule 11 of the Federal Rules of Civil Procedure "provides for the imposition of sanctions when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1177 (9th Cir. 1996); *see also* Fed. R. Civ. P. 11; *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). "The two problems that Rule 11 addresses, therefore, are 'frivolous filings' and the use of judicial procedures as a tool for 'harassment.'" *Hudson v. Moore Bus. Forms, Inc.*, 836 F.2d 1156, 1159 (9th Cir. 1987). "Sanctions are mandatory if the court concludes that Rule 11 has been violated." *Id.*

"An award of Rule 11 sanctions raises two competing concerns: the desire to avoid abusive use of the judicial process and to avoid chilling zealous advocacy." *Id.* at 1159–60. Therefore, when determining whether a complaint is frivolous or filed with an improper purpose, court apply an objective standard of reasonableness, asking primarily whether the complaint "states an

arguable claim—not whether the pleader is correct in his perception of the law." *Id.* at 1159. Accordingly, the subjective intent of the filer is irrelevant to the court's objective analysis. *Id.*; *see also Zaldivar v. City of Los Angeles*, 780 F.2d 823, 829 (9th Cir. 1986), *abrogated on other grounds by Cooter*, 496 U.S. at 399–400.

Notably, Rule 11's application "explicitly applies to parties not represented by attorneys." *Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994) (explaining that courts cannot declines to impose monetary sanctions "simply because plaintiff is proceeding *pro se*"). "The district court is therefore not at liberty to exempt automatically such persons from the rule's requirements." *Id.* Accordingly, when taking into consideration the context of the case, "[a] sanction imposed under [Rule 11] must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

The form of sanctions available under Rule 11 include "[r]easonable attorneys' fees and expenses," which may be awarded by the court "when a claim is clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." *Simpson*, 77 F.3d at 1177 (citing 31 U.S.C. § 3730(d)(4)); *see also* Fed. R. Civ. P. 11(c)(4) ("The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.").

### III. Analysis

#### A. Rule 11 Sanctions

This Court has already decided that there is no legal basis for this case to proceed for multiple reasons "pursuant to Fed. R. Civ. P. 12(b)(1), based on *Younger* abstention and/or *Rooker-*

*Feldman* abstention doctrines and pursuant to Fed. R. Civ. P. 12(b)(6), based on judicial immunity and failure to state a claim against Defendants." (Dkt. 33 at 26). The Court need not reiterate the reasons for its finding that this case was both "frivolous and brought in bad faith[.]" (*Id.* at 2).

Accordingly, Rule 11 sanctions are appropriate here under either Rule 11(b)(1), prohibiting litigation "presented for any improper purpose," or Rule 11(b)(2), requiring that a case's "claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]" Fed. R. Civ. P. 11(b)(1)–(2).

### B.      Attorney's Fees

District courts have "inherent power to levy sanctions, including attorneys' fees, for willful disobedience of a court order or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons[.]" *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001) (cleaned up) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980)). "[S]anctions are available if the court specifically finds bad faith or conduct tantamount to bad faith," specifically encompassing "a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.* at 994. As the Court explained above, such a finding has already been made in this case. (*See* Dkt. 33 at 2). Therefore, the Court must only determine the appropriate amount of attorney's fees in this case. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("Once a party has established that it is entitled to an award of attorneys' fees, it remains for the district court to determine what fee is reasonable.").

The Supreme Court in *Hensley* established a "lodestar" calculation on which reasonable attorneys' fees are traditionally based. *Id.* "The most useful starting point for determining the

amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. In order to determine the value of the legal services, or the lodestar, "[t]he party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Id.* Notably, the district court may reduce the award where appropriate and "also should exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Id.* at 433–34.

"The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Id.* at 434. For instance, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Id.* at 435. The second step of the inquiry allows courts to "adjust the lodestar upward or downward using a 'multiplier'[4] based on factors not subsumed in the initial calculation of the lodestar." *Van Gerwen*, 214 F.3d at 1045.

"The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts that

---

[4] "Under *Hensley,* 11 factors are relevant to the determination of the amount of attorney's fees: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) time limitations imposed by the client or the circumstances; (7) the amount involved and the results obtained; (8) the experience, reputation and ability of the attorneys; (9) the "undesirability" of the case; (10) the nature and length of the professional relationship with the client; and (11) awards in similar cases." *Van Gerwen*, 214 F.3d at 1045 n.2.

the lodestar amount is unreasonably low or unreasonably high." *Id.* (cleaned up). Ultimately, despite these considerations, "[t]here is no precise rule or formula for making these determinations." *Hensley*, 461 U.S. at 436. "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment." *Id.* at 436–37. Importantly, "[a] request for attorney's fees should not result in a second major litigation." *Id.* at 437.

Defendants have provided evidence of counsel's billing records in the form of "an itemization and description of the work performed[.]" (Dkt. 34 at 8); (Dkt. 34-1); (Dkt. 34-4). The total hours worked came out to 65.50 hours, (Dkt. 34-4 at 2), at a rate of $400 per hour, (Dkt. 34-1 at 2). Finding that this rate is reflective of "the prevailing market rates" in this community, *see Webb v. Ada County*, 285 F.3d 829, 840 n.6 (9th Cir. 2002), and that the hours were "reasonably expended," *see Hensley*, 461 U.S. at 435, the Court awards attorney's fees to Defendants in the amount of $26,200.00.

## CONCLUSION

IT IS HEREBY ORDERED that Defendants' Motion for Sanctions, (Dkt. 35), is **GRANTED**.

IT IS FURTHER ORDERED that Defendants' Motion for Attorney's Fees and Costs, (Dkt. 34), is **GRANTED**.

IT IS FURTHER ORDERED that Plaintiffs shall pay Defendants $26,200.00 in attorney fees and costs.

IT IS SO ORDERED.

Dated   November 22, 2023.

_____
ROBERT C. JONES
United States District Judge